Good morning. May it please the court. My name is Cheryl Ampasha. My partner, Brett Gannon, and I are Boston College Law students. We are appearing under the supervision of Kari Hong. We represent petitioner Germán Paniagua-Rodriguez, whom we will refer to as Mr. Paniagua, and I will watch my time. We will first address asylum and then CAT. On asylum, when application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration. Under HLSA, the board said that the hypothetical group of those who, quote, publicly cooperate with law enforcement, unquote, would be particular and socially distinct when the cooperation is easily verified and the country has protection law. Now, my understanding, Ms. Pasha, is that the government is asking for a remand on this and which is probably what you would have asked for initially, but now you're fighting it tooth and nail and trying to convince us that, no, don't have that remand and just let us win right here. So, my concern on that is INS V. Ventura, the Supreme Court stated that generally a court of appeals should remand a case to an agency for decision on a matter that places primary responsibility in the agency's hand, and it seems to me this could be one of those cases. So, you're in the enviable position that someone's not fighting a remand, but you're pushing it further, trying to drag it over the finish line and say, no, let us win here. So, Your Honor, respectfully, we submit that Ventura does not apply here because we're only asking this court to decide legal questions. We're not claiming that the Ninth Circuit can grant asylum outright, but we submit that the court has the power to make a legal determination based on the facts that the BIA had already considered. Well, that isn't really, to me, why Ventura isn't applicable. That's kind of a confusing response, in my view. Ventura says if the agency didn't decide an issue, we can't, and here the agency decided all the issues, and nothing has been determined. It seems to me that with respect to the particular social group question, even if there's no technical problem, why would we try to interpret the agency's new precedent before it has had a chance to interpret its own precedent? I understand on the other claims, there's kind of no change in the law, no change that would warrant, you know, not just deciding those issues, but everything that relates to social groups. Why shouldn't we send that back? And if the court just agrees and wishes to remand the issue to the agency, Mr. Paniagua agrees with the government's motion to do so. Turning to Kat, on individualized risk, the government argues that the Sinaloa cartel's threat against him is too remote to show that the cartel is still interested in fulfilling it today. But the government is wrong. First, this threat was a serious one. Arizona jail officials found those threats specific enough and credible enough to move Mr. Paniagua into protective custody where he was housed for four years. Second, the Sinaloa cartel has a continuing reason to fulfill this threat, because Mr. Paniagua interrupted a large-scale lucrative international drug-running scheme that imported $56,000 worth of heroin each week. Maybe you can correct something for me. I thought this was a fairly unfortunate situation where the government didn't really, where they published everything and, you know, put him out on the street. But I thought he got out of 120 months because of that. Is that true? So right after he was let out, he was immediately put into immigration detention, where he's been until this November. Okay, but that has nothing to do, okay, so that, he's been in immigration detention, not, he did get, he did plead for a 120-month sentence and in prison, but because of the government's blunder of, you know, throwing him under the bus and out to the world, that he got out of 100, he got out of a 10-year sentence, right? So, actually, all of the charges ended up being dropped because the government was missing a document, and so the case ended up being dismissed. Against everyone? Against everyone. Oh, okay, so it wasn't just him. It wasn't just him. Okay. He was, they dropped 143 He never had to testify, right? He never had to testify. He did never have to testify. Third, when Dr. Slack was asked, quote, the cartel, would the cartel just forgive and forget? Unquote. Dr. Slack answered that the Sinaloa cartel won't. Quote, they will keep track of these grudges for a very, very long time. It will be very important for them to make an example out of Mr. Paniagua. Unquote. Fourth, in Rodriguez Molinaro, the Seventh Circuit recently rejected a similar remoteness argument when the government claimed that Loseda's cartel had lost interest in harming a drug dealer who had been in U.S. prison for seven years. There, the petitioner was in U.S. prison, the cartel was in Mexico, and the Seventh Circuit held that one could hardly expect the cartel to visit the petitioner in American prison. But the Seventh Circuit found that the threat was a continuing one because an expert had testified that, quote, cartels have long memories and do not easily let transgressions go without some sort of punishment or retribution. Here, Dr. Slack has testified that the cartels have, quote, a long institutional memory, unquote, and that the passage of time will not protect Mr. Paniagua. And the cartel- Can you affect the issue of, although the government corruption in Mexico is well documented, but there's been some time that passed, doesn't the government's more recent efforts to fight corruption support the agency's determination that the government would not acquiesce to petitioner's persecution or torture if he were removed to Mexico? Turning to acquiescence, the BIA found that the Mexican government's efforts were, quote, not perfectly effective, unquote. But it is not a question of efforts. In Xochitl Jaime's, the court explained that even when laudable national efforts were undertaken, when local officials are still complicit in harming an applicant, those efforts mean nothing. The key question is, will the cartels kill Mr. Paniagua? The record says yes. There is an astonishing degree of corruption by Mexican officials who have been bought off by infiltration, by fear, or by money to do the bidding of the cartel. The Mexican police will arrest the cartel's rivals and hand them over for the cartel to murder them. If Mexican police officers refuse the cartel's bidding, the cartels will go after them. This record is not like Andrade Garcia or have information to investigate a crime. Rather, the Mexican police are actively involved in the cartel-ordered kidnapping and murder that Mr. Paniagua fears will be his fate. Let me just ask you this, though. So we have this, we have a new situation that, that if it requires remand, aren't there terms in this new situation that would, uh, so why shouldn't we determine, uh, so why shouldn't we let the, the, the agency determine whether he falls within this particular social group and define the terms of, um, what the change in the law is? Why shouldn't we give them the first stab at it? Um, sorry, your honor, are you talking about asylum or are you talking about CAAT? Well, I'm talking about the reason that the government's asking for a remand. Which would be asylum, primarily asylum and withholding, because that deals with the particular social group question. Right. So, your honor, the government concedes that in cases where the agency considered the evidence in full, that this court has the authority to grant CAAT outright, and there's no dispute that whole record has been considered here. It's not about CAAT. The question, as I understood Judge Callahan's question, she was circling back to the issue of whether the asylum claim should be remanded to consider the new direction on particular social groups. And, and we are, um, we are okay with remand on that, uh, your honor. At this point, I think, uh, we're fighting harder for CAAT than we are, um, asylum on, for the remand. We're fighting against the remand for CAAT rather than for asylum. Basically, if I understand your position on CAAT, it is there's been no new law, either from the BIA or from us, that affects the CAAT claim and the government had its chance, and so we should just go ahead and decide it one way or another. That, that is our position, your honor. CAAT is granted when there's a 51% likelihood of harm, and that's not reasonable doubt. It's 50% plus a feather, and these facts here meet that standard. And if the court agrees that there's only one conclusion that can be drawn from these unique facts, it has the authority to grant CAAT as it did in Nguyen and Xochitl Jaime's. If there are no further questions, with leave of the court, may I reserve my remaining time for rebuttal? Oh, sorry, Judge, I'm sorry. Let me stop the clock for a sec here. Um, the question is, so, um, but you have, uh, you have, uh, someone else that's doing rebuttal too? That's correct, your honor. So, are you going to now do rebuttal too? Is that, I just know, no, no, I'm, I'm, uh, giving my time to him for rebuttal. Okay, does that, do the judges have any problem with if we just pop the two minutes and 48 seconds over to her? No, that's fine. Okay, thank you. Thank you, your honor. Good morning, your honors. May it please the court. I'm Rebecca Nahas for the United States Attorney General Merrick Garland. The court should deny the petition for review in part as to cancellation of removal and as to the claims that have been abandoned and waived by petitioner relating to his mental illness. However, the government does request remand as to two issues. The first is whether petitioner's particular social group is sufficiently particular and socially distinct in light of an intervening board precedent explaining its case law on those points. And we are also asking for remand, since it's required for asylum and withholding of another bite at that apple. There, you know, the evidence came in in great length on cat. The new board precedent does not pertain to cat. It's about particular social groups, which are not even relevant to the cat analysis. And you have, you know, an expert here who says that the chances of the local police actually trying to protect this individual are, in his words, extremely low and that, you know, that this guy is going to be marked for killing. Why, why should we remand that? Your honor, I understand your concern. Matter of HLSA does not implicate the cat protection claim. But because this case requires remand for asylum and withholding of removal, the government's position has changed. And we believe, to be quite frank, the government was persuaded by the reply brief and the points about the agency not providing a sufficient reasoned consideration to the expert evidence. And your honor, to answer your question more directly, the reason we think remand is appropriate rather than the court reaching that issue is because of Ventura. And because... Oh, counsel, Ventura has nothing to do with that. I'm sorry. Ventura is designed to forbid us from dealing with issues that the BIA failed to reach or there's been some new law that they have not had an opportunity to respond to. Basically, what you're saying is, well, we didn't do a good enough job analyzing all the evidence in the cat claim, so we'd like to try again. There's nothing Ventura-like about that. The in terms of evidence, the agency decided it. And if they decided it wrong, it's our problems to be able to say that. And I find it also a little unusual that you'd like us to deny on cancellation of removal but not bother with cat where you might lose. That seems quite inconsistent to me because neither of those issues, cancellation or cat, is affected by the new precedent. So, why shouldn't we just decide it? Your honor, I think I have two responses. I think there's two questions in there. Regarding the Ventura issue, this court in Lopez v. Ashcroft did apply the Ventura ordinary remand rule in a case where the agency had already decided the change of circumstances issue. But the court found that the agency had erred by not applying an individualized sort of analysis of that conclusion. And so, the court sort of grappled with this question and said, well, Ventura involved a case where the agency didn't reach the issue at all. And this case is different because the agency did reach the issue. But ultimately, the court said, under the ordinary remand rule, we're going to send this back to the agency because it involves fact-finding. There needs to be an application of the proper individualized standard to the facts of this case. And that's not something that the court can do. But here, counsel, the question before us, which is legitimately before us, having nothing to do with Ventura, is whether substantial evidence does or does not support the agency's determination to deny cat protection. And if every reasonable fact-finder would be required on this evidence to conclude that the BIA was wrong, the statute and all of our precedents say we can do that. We don't have to send that back. I think that the important distinction, Your Honor, in the cases that have granted cat outright is that the agency considered all of the evidence. And I think that it's a failure to provide reasoned consideration to an expert testimony. And in all of those cases, in Cole and Castillo, the court remanded it twice for that same reason. The court declined to assess the expert's credibility, assess the expert's opinion, analyze it in relation to the other evidence in the record, because it would really be outside of the appellate court's review. And I was unable to find any case remanding for sort of, or rather, deciding the case relating to a Cole type of challenge where the court granted asylum, or rather, cat outright. And so I think because this case involves that specific scenario where we need further analysis from the agency as to cat and expert evidence, remand would be appropriate. Well, Castle, you know, the BIA referred specifically to the expert testimony and, you know, explained why it was satisfied with the immigration judge's rejection of that testimony. There's not a failure to look at the evidence here. It's a question of how it was looked at entirely. Well, Your Honor, two points. First, I think what was persuasive to the government in that the immigration judge, which, with respect to clear probability of future torture, indicated, considered the expert's evidence and then characterized it as generalized, dismissed it as generalized. And I think that petitioner is correct that it's, I think that that needs to be looked at. That's not what the BIA said, though. And it's the BIA's decision that we're reviewing because it gave its own reasons for not being persuaded by Dr. Slack. The board provided. Yeah, go ahead. Sorry. I think the board said in one line, we disagree with petitioner that the immigration judge failed to consider the expert evidence. So the board didn't enlighten us or illuminate this issue more than what the immigration judge did. And so we, you know, the government's trying to do the right thing and have, and I understand, you know, the sort of frustration of this being a second bite at the apple, but I think that the idea is this case needed to be remanded anyways for asylum and withholding or removal. Yes. Why? Then why don't you want the cancellation to be remanded? It just seems to me that you're picking and choosing based on whether you think you can do a better job of, you know, shoring up a poor, poorly written decision on CAT. And that, that just strikes me as being inappropriate. I'm speaking only for myself, obviously. I understand your merits of the CAT claim. Why isn't every reasonable fact finder compelled to conclude that this person is likely to be killed and or tortured if returned? Your honor would like me to address the merits rather than. Please. You have kind of, you have kind of bad facts here. Because, you know, it's, you know, the government, you know, I'm not saying that they maliciously did it, but when you have a, an agreement to cooperate and then you give it to all the people they're going to testify against and you publicly put it out there, that's a pretty hard one to pull back. I understand your honor. And I think that, you know, going to the merits, we think that, as I argued in the answering brief, we think that sort of what distinguishes this case in terms of queer probability of future torture is that in, in the sort of, I guess it's been now nine or 10 years since, or rather, I guess it's been seven years since this agreement has become public, he hasn't received any threats. And, and I think that that's really important. And, and also his family has not been threatened. And that's despite the expert's testimony that typically these drug cartels go, go after the family members to, to send a message to the individual. So I think what, what distinguishes this case from a lot of cases is the passage of time in a new case to his advantage. And you want to use the passage of time to your advantage and say he hasn't been so it's less likely that he would be tortured. Right. Is that what you're saying? I think that, yeah, that's what the immigration judge said. And you want to say that Mexico is doing better. I think that's also part of the acquiescence finding. Correct. But so sorry, going, going back to hypothetically, if this, if there wasn't a remand on the other issue, hypothetically, we think that what's here right now would compel a different finding, then we should reverse on the cap, right? Hypothetically? Reverse and remand, we think, is the proper course. I'm not sure if that was responsive to your Honor's question. But because, because we, we believe that the, well, I think that probably it would be grant, I guess, would be if we think it compels a different result, then we grant on the cap. Well, the government's position is that would be inappropriate, as I, as I mentioned, because it would require this court to give weight to the expert evidence and then wait. So, quality of cap claim that you see where the court does, something might have happened to the clock. I think it might have frozen. Did the clock freeze? No. Okay. Maybe because I'm talking too long. I'm sorry. I can, I can still see it. So it's, I can see it. What, how much time does she have left? 346. Okay, thank you. Go ahead. So, yeah, I just, I just wanted to point out that this case doesn't involve past torture. It doesn't, you know, ECHOA, HIMIS, that's a case where the, the petitioner experienced past torture and past acquiescence, where the police watched while she was beaten and did nothing. We don't have that here. We, this is a case that's really forward looking. And, and so, if the court looks at the merits, we, we think that, that, that it should remand for, for further consideration in light of the expert evidence. And, and I also want to address the particular social group determination. Before you do that, if you feel that the record is sufficient to affirm the IJ's ruling on the cat claim, why shouldn't we just do that and not remand? That's, that's certainly an avenue that the court can take. I, I just think that because remand. If the current record is adequate to affirm, why do you want to send it back? Your Honor, I think that the idea was that because we, we needed remand as to asylum and withholding, which if granted below would moot out cat. You know, I think we thought it would be best for the government, rather for the agency to provide a better, clearer decision and reconsider it in light of the expert evidence. But I think that If cat resolves it, isn't asylum mooted out? No, they're quite different. They put the person in a different status. Cat is kind of last resort. That's right, Your Honor. And so I think it only works the reverse. So if you're granted asylum or withholding, it would, it would moot out cat, but cat wouldn't moot out your claims for the relief. Does it actually moot it out? Because I've seen cases, certainly where all forms of relief are granted. Is that, am I mistaken about that? Perhaps. Yeah, I'm sorry. Do you think they have sort of more of a temporal basis for how long it, you know, what's the next step? Because can't things, you know, one's more temporary than the other, or one can, time can change, and then you don't have it anymore. Yeah, I mean, I think with asylum, it provides a pathway to lawful permanent residence. Withholding of removal and cat do not provide that pathway. Perhaps I've misspoken then, but I think that typically individuals would prefer asylum and withholding of removal because there's more protections attached, and cat is a lot more temporary and can sort of be lifted depending on the conditions in the country at any time. And I'd like to just quickly also state that the government does not believe that this court can decide the particular social group determination in the first instance. I think it's because there's intervening decision that really clarifies the board's position on these type of groups premise on law enforcement cooperation. And moreover, we think that there are still some fact-binding issues that need to be resolved in light of the clarifications provided by the board in matter of HSLA. So unless your honors have any questions, my time is up, and I thank you. All right, then we'll go back to petitioner for rebuttal. I think, is that Mr. Gannon? It is. All right, you can proceed. Thank you, your honors. Thank you, your honors. My name is Brett Gannon. I have one point. On cat, there is no new facts. There is no new law. This is Mr. Paniagua's second time before the Ninth Circuit. It is time to give him the protection he deserves. If there are no further questions, may I submit our case? All right. Do either of my colleagues have any questions? No, I don't. Thank you, though. All right, then I believe that would conclude this matter with them would be submitted, and that would, I believe, conclude our calendar for today. And this court would be in recess until tomorrow at 9 o'clock. Am I correct on that? As far as I know. Okay. All right. Thank you, counsel, and thank you for pro bono work, and congratulations, citizens, students. You are now experienced lawyers at the Ninth Circuit. Thank you, your honors.
judges: Graber, Callahan, Selna